UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUNSET COMMUNITY HEALTH CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL ONE FINANCIAL CORPORATION, <br><br> Defendant. | Civil No. 22-1822 (JRT/LIB) <br><br> **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

Christopher R. Sall and Terrance W. Moore, **HELLMUTH & JOHNSON, PLLC**, 8050 West Seventy-eighth Street, Edina, MN 55439 for Plaintiff.

Addison Jelani Morgan, **TROUTMAN PEPPER HAMILTON SANDERS LLP**, 600 Peachtree Street Northeast, Suite 3000, Atlanta, GA 30308; Jon S. Hubbard, **TROUTMAN SANDERS**, P.O. Box 1122, Richmond, VA 23218, for Defendant.

Plaintiff Sunset Community Health Center, Inc. ("Sunset") alleges that it attempted to wire transfer $2 million to Arizona Community Foundation ("ACF"). But, unbeknownst to Sunset, an unidentified fraudster intercepted the electronic communications between Sunset and ACF and Sunset mistakenly sent the $2 million to the fraudster's bank account with Capital One Finance Corporation ("Capital One"). Capital One returned a portion of the $2 million but refuses to return the remaining amount. Sunset brought this action against Capital One, alleging conversion, civil theft, promissory estoppel, breach of contract, unjust enrichment, declaratory relief, and injunctive relief. Capital One moved to dismiss all claims. Because Sunset has adequately pled a claim to relief arising under

the Uniform Commercial Code ("UCC"), the Court will deny Capital One's Motion as to the declaratory and injunctive relief claims. However, because Sunset's remaining claims are preempted by the UCC, the Court will grant Capital One's Motion as to the conversion, civil theft, promissory estoppel, breach of contract, and unjust enrichment claims.

## BACKGROUND

### I.  FACTS

Sunset pleads the following facts in its amended complaint. (Am. Compl., Aug. 31, 2022, Docket No. 12.) Sunset is a non-profit organization that owns and operates primary health care centers in Arizona. (*Id.* ¶ 11.) In March 2022, Sunset intended to contribute $2,000,000 to ACF for the purpose of furthering its charitable mission. (*Id.* ¶ 13.) In anticipation of its contribution, Sunset requested wire transfer information from ACF. (*Id.*)

ACF provided its wire instructions to Sunset but, unbeknownst to Sunset, a then-unidentified fraudster had unlawfully accessed Sunset's email and manipulated the Wire/EFT Routing Number and Account Number. (*Id.* ¶ 14.) Unaware that the fraudster had tampered with the account information, Sunset initiated the wire transfer of $2,000,000 on March 3, 2022. (*Id.* ¶ 15.) The wire transfer listed ACF as the intended beneficiary but used the fraudster's bank account number. (Am. Compl., Ex. A., Aug. 31, 2022, Docket No. 12-1.) The account substituted by the fraudster was at a Capital One "Café" location in Saint Cloud, Minnesota. (Am. Compl. ¶ 16.)

On March 7, 2022, Capital One called Sunset's bank, Foothills Bank ("Foothills"), to inform it that Capital One had "fraud concerns" regarding the wire transfer.  (*Id.* ¶ 17.)  Sunset immediately confirmed that the account number misdescribed ACF and requested that the funds be recalled.  Capital One agreed.  (*Id.* ¶ 18.)  Despite this, Sunset alleges that Capital One went ahead and deposited the $2 million into the fraudster's account.  (*Id.* ¶ 23.)

For a week, Capital One provided no updates on its attempts to protect the funds or otherwise prevent the fraudster from utilizing their account.  (*Id.* ¶ 19.)  Foothills contacted Capital One on March 15 and on March 18 reiterating that there was a concern of fraud and requesting Capital One respond as soon as possible.  (*Id.* ¶¶ 20–21.)  Capital One finally responded on March 22, agreeing and consenting to the return of the funds.  (*Id.* ¶ 22.)  But Capital One did not return the $2 million at that time.  (*See id.* ¶ 30.)

The Yuma Arizona Police Department contacted Sunset in April and explained that it had found that Capital One had discovered that the funds had been deposited into the fraudster's account, Capital One confirmed that the fraudster had access to the account, a $645,000 check was issued from the fraudster's account, and Capital One supposedly had video footage of the fraudster at its location in Saint Cloud.  (*Id.* ¶ 24.)

On May 20, Capital One consented to return the funds to Foothills in exchange for Foothills executing an Inter-Bank Hold Harmless Agreement, which identified the March 3 wire transfer as unauthorized.  (*Id.* ¶¶ 25–26.)  Foothills executed the agreement.  (*Id.* ¶

27.) However, when Capital One finally remitted payment to Foothills in August, it was only for $1,220,900.47. (*Id.* ¶ 29.)

## II.   PROCEDURAL HISTORY

Sunset filed this action in state court on June 28, 2022, and Capital One removed to federal court. (Notice of Removal ¶ 3, July 20, 2022, Docket No. 1.) Capital One filed its first motion to dismiss shortly thereafter. (*See* 1st Mot. Dismiss, Aug. 10, 2022, Docket No. 10.) In response, Sunset filed an amended complaint, bringing claims against Capital One for conversion, civil theft, promissory estoppel, breach of contract, unjust enrichment, and seeking declaratory and injunctive relief. (*See generally* Am. Compl.)

Capital One then filed this second Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (2nd Mot. Dismiss, Sept. 14, 2022, Docket No. 13.) Capital One alleges that it is not legally obligated to return the remaining funds to Sunset because Sunset authorized the transfer and did not misdescribe the recipient of the funds under the UCC. (*See generally* Mem. Supp. Mot. Dismiss, Sept. 14, 2022, Docket No. 14.) Further, Capital One argues that it obtained ownership rights in the funds after the transfer occurred, and Sunset's attempt to cancel transfer of the funds was ineffective. (*Id.* at 11, 13.) Capital One also asserts that Sunset's common law claims are preempted by the UCC. (*Id.* at 18.) Sunset opposes Capital One's Motion to Dismiss. (Mem. Opp. Mot. Dismiss, Oct. 5, 2022, Docket No. 15.)

**DISCUSSION**

I.   **STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II. ANALYSIS

### A. Applicable Law

The parties agree that Article 4A of the UCC exclusively governs the rights, procedures, and liabilities arising out of commercial electronic "funds transfers" such as this.[1] The UCC instructs that those issues relating to funds transfers are governed by the law of the jurisdiction in which the beneficiary's[2] bank is located. U.C.C. § 4A-507(a)(3). Since the beneficiary bank here is the Capital One Café—which is located in Saint Cloud, Minnesota—Minnesota law applies. Minnesota adopted Article 4A in 1991. Minn. Stat. Ann. § 336.4A–101 *et seq*. Therefore, the UCC, as adopted by Minnesota, applies to this action.

The UCC provides rules for several types of funds transfers, including "payment orders." A payment order is "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary." U.C.C. § 4A-103(a)(1); Minn. Stat. Ann. § 336.4A-103(a)(1). Here, the funds transfer qualifies as a payment order because Sunset

---

[1] The UCC defines "funds transfer" as the "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order." U.C.C. § 4A-104(a).

[2] "Originator" refers to the sender of the funds, while "beneficiary" refers to the person to be paid by the beneficiary's bank, which is the bank identified in a payment order in which an account of the beneficiary is to be credited. *See* U.C.C. §§ 4A-104(c); 4A-103(2–3). Accordingly, Sunset is the originator in this action and the fraudster is the beneficiary. Capital One is the beneficiary's bank.

gave instructions to its bank to pay Capital One $2 million. Therefore, the statutory provisions governing payment orders are relevant.

Having determined that the UCC is applicable, the Court will first address Sunset's claims arising under the UCC for declaratory and injunctive relief. It will then discuss Sunset's remaining common law claims.

### B. Declaratory and Injunctive Relief Claims

First, Sunset seeks a judicial declaration that the Defendant's receipt and deposit of the funds was unlawful, that Defendants consented and agreed to return the full amount of the funds, and that Sunset is entitled to the full amount of the funds, in addition to any costs. (Am. Compl. ¶¶ 58–60.) Sunset also seeks injunctive relief and asks the Court to enjoin Capital One from releasing the funds and return the funds to Sunset or deposit them in the Court. (*Id.* ¶¶ 61–64.) The Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). Federal courts have jurisdiction to issue declaratory judgments only where there is an actual "case or controversy." *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). A justiciable controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).

Sunset's claims broadly stem from the allegation that Capital One has unlawfully retained the $2 million. (Am. Compl. ¶¶ 60, 63.) This is an actual case or controversy, so Sunset's judicial declaration and injunctive relief claims encompass any rights that Sunset has under the UCC. Because the Court finds that Sunset has adequately pleaded a claim to relief under the UCC, it will deny Capital One's Motion to Dismiss as to the declaratory and injunctive relief claims. However, for the sake of clarity, the Court will require Sunset to amend its complaint and identify the specific provisions of the UCC under which it believes Capital One is liable.

### 1. Unilateral Cancellation of Payment Order

First, the Court must consider if Sunset sufficiently pleaded under the UCC that it successfully unilaterally cancelled its payment order. A sender of a payment order may unilaterally cancel the order only before the receiving bank accepts it. *See* U.C.C. § 4A-211(b) (providing unilateral cancellation "if notice of the communication is received at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication before the bank accepts the order"); Minn. Stat. Ann. §336.4A-211(b). If the payment order has already been accepted, a sender's unilateral cancellation attempt is generally ineffective.

Thus, to determine whether Sunset successfully unilaterally cancelled the payment order, the Court must determine whether Capital One had already accepted the funds when Sunset alerted Capital One to the fact that it was a fraudulent transfer during the telephone call. Under the UCC, acceptance of a payment order occurs at the earliest of:

(1) when the beneficiary's bank pays or notifies the beneficiary of the payment order; (2) when the bank receives payment of the entire amount; or (3) the opening of the next business day following the date of the payment order if the sender's order is fully covered by a withdrawable credit balance. U.C.C. § 4A-209(b); Minn. Stat. Ann. § 336.4A-209(b).[3]

Though barely, Sunset has plausibly alleged a claim to relief on this issue. Sunset claims that it initiated the $2 million transfer on March 3, and that it received the call from Capital One just a few days later. Capital One allegedly requested Sunset "verify the validity and purpose of the wire transfer and confirm **whether it wanted the funds released** to the account listed on the fraudulent wire instruction." (Am. Compl. ¶ 17 (emphasis added).) Capital One verifying "whether [Sunset] wanted the funds released" suggests that Capital One had not yet actually released the funds to the fraudster at the time of the phone call, and Sunset in fact alleges that Capital One did not deposit the funds into the fraudster's account until after that telephone call. (*Id.* ¶ 23.) If true, Capital One likely had not yet "accepted" the payment order at the time of the telephone call, and Sunset could have unilaterally cancelled the payment order at that time.

---

[3] Capital One wrongly argues that § 4A-403 determines when acceptance occurs. That provision defines when **payment** occurs—not **acceptance**. U.C.C. § 4A-403(a)(2); Minn. Stat. Ann. § 336.4A-403(a)(2). Since § 4A-209 governs acceptance of payment orders, the Court will employ it here.

Alternatively, Capital One may not have "accepted" the payment order if it had not yet received the full $2 million at the time of the phone call. Though Sunset's complaint is vague on this matter, the Court finds this issue is well-suited for discovery.

Sunset has adequately pled a claim to relief based on its unilateral cancellation of the payment order. The Court urges the parties to prioritize discovery regarding when Capital One received the full $2 million and made it available to the fraudster, as these two facts may determine whether Sunset could unilaterally cancel the payment order pursuant to UCC § 4A-211(b).

### 2. Cancellation After Acceptance

Second, the Court must consider if Capital One effectively cancelled the payment order after acceptance. If a sender fails to unilaterally cancel a payment order, there is still the possibility that the beneficiary or receiving bank may consent to cancellation. U.C.C. § 4A-211(c); Minn. Stat. Ann. § 336.4A-211(c). A beneficiary's bank may agree to cancel an accepted payment order in only three situations: (1) if it is a duplicate payment order, (2) if it misstates the beneficiary, or (3) if it is an overpayment. U.C.C. § 4A-211(c)(2); Minn. Stat. § 336.4A-211(c)(2). If none of those situations have occurred, the cancellation of the accepted payment order is ineffective. The second situation has occurred here: the fraudster was not entitled to receive payment. Sunset sought to wire

the funds to ACF, not the fraudster. Accordingly, Capital One may—but need not—consent to cancellation of the payment order.[4]

Nevertheless, the Court will dismiss any claims arising under this provision because Sunset's complaint does not adequately plead that Capital One consented to the return of the funds. The UCC gives beneficiary banks broad discretion to cancel funds transfers. *See* U.C.C. § 4A-211, cmt. 5. It is not dispositive that Capital One allegedly made statements that it would return the funds because consent may be revoked. *See In Cumis Ins. Soc., Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1105 (S.D.N.Y. 1996) (finding that a bank had sole discretion under Article 4A to cancel a payment order, even if it previously indicated that it would put a hold on a beneficiary's account so they could not access the fraudulent payment). Capital One has since indicated that it does not consent to the return of the remaining funds. Accordingly, Sunset has failed to state a claim to relief under § 4A-211(c).

### 3. Misdescription of the Beneficiary

Third, the Court must consider if Sunset sufficiently pled that Capital One has a duty to return the funds pursuant to § 4A-207 because the transfer misdescribed the beneficiary. The UCC provides that a beneficiary's bank cannot accept a payment order

---

[4] Though Capital One argues that this is not a "misstated beneficiary" situation because Sunset authorized the transfer, the comments to the UCC demonstrate this argument is futile. *See* U.C.C. § 4A-211, cmt. 4 (providing an example entitled "Case #3" that is analogous to the present action).

if the payment order misdescribes the beneficiary.  U.C.C. § 4A-207; Minn. Stat. § 336.4A-207.  A misdescription occurs when a payment order identifies a beneficiary's name and a bank account number, and the bank knows that those two pieces of identification do not match.[5]  U.C.C. § 4A-207(b)(2).  The beneficiary bank is only liable if it has actual knowledge of the mismatch.  *See* U.C.C. § 4A-207(b)(2) (using the term "know"); U.C.C. § 1-202(b) (defining "knowledge" as meaning actual knowledge, and "know" to have a corresponding meaning).  When a beneficiary bank does not possess actual knowledge of a misdescription, the risk of loss is placed on the originator or the originator's bank.  *Id.*, cmt. 3.  But banks have no affirmative duty to confirm that the names and account numbers on payment orders match.  *Id.*, cmt. 2.

Actual knowledge is assessed at the **time of payment** of the payment order.  *See* U.C.C. § 4A-207, cmt. 2. "Time of payment" is defined in § 4A-405.  A wire transfer's time of payment occurs in three scenarios: (1) when the beneficiary is notified of the right to withdraw the credit, (2) when the bank lawfully applies the credit to the beneficiary's debt, or (3) when the funds are otherwise made available to the beneficiary by the bank.  U.C.C. § 4A-405(a)); *see also Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 743 (S.D. Miss. 2020).

---

[5] For example, if the payment order listed the beneficiary as X and provided the bank account number 111111, but the bank knew that Y was the true owner of bank account 111111, then the bank could not accept the payment order under § 4A-207.

Here, Sunset has adequately pled that Capital One had actual knowledge of a misdescription of the beneficiary prior to the time of payment. The payment order named ACF as the beneficiary but provided the fraudster's account information. (Am. Compl., Ex. A.) Therefore, there was a mismatch. Capital One had actual knowledge of the mismatch when Sunset identified the transfer as fraudulent during the March 7 phone call. Since "time of payment" occurs when funds are made available to a beneficiary, and Sunset alleges that Capital One did not make the funds available to the fraudster until after the March 7 phone call, Sunset adequately pled that Capital One had actual knowledge of the misdescription prior to the time of payment. Therefore, Sunset has plausibly pleaded that Capital One wrongfully accepted the payment order and is liable under § 4A-207(b)(2).

Sunset has adequately alleged that Capital One is liable for the remaining funds under § 4A-211(b) for unilateral cancellation of a payment order and § 4A-207 for wrongfully accepting a payment order that misdescribes the beneficiary. Therefore, Sunset's claims for declaratory and injunctive relief must survive Capital One's Motion to Dismiss. However, Sunset's complaint does not specifically identify which UCC provisions give rise to its rights and Capital One's obligations. The Court will therefore require Sunset to amend its declaratory relief and injunctive relief claims to identify the specific UCC provisions under which it believes Capital One is liable.

### C. Remaining Claims

Sunset's remaining claims are preempted by the UCC. Though the UCC's Article 4A does not bar all common law claims, it bars common law claims "when they create rights, duties, and liabilities inconsistent with Article 4A." *Upsher-Smith Laboratories, Inc. v. Fifth Third Bank*, No. 16-556, 2019 WL 13235411, at *9 (D. Minn. Mar. 22, 2019) (finding a breach of contract claim preempted by Article 4A because it was rooted in the defendant's alleged failure to follow procedures for funds transfers) (internal quotation omitted). "[T]he critical inquiry is whether Article 4A's provisions protect against the type of underlying injury or misconduct alleged in a claim." *Id.* (internal quotation omitted). Accordingly, Sunset's common law claims are preempted by the UCC if Article 4A protects against the type of underlying injury or misconduct alleged in the common law claims.

#### 1. Promissory Estoppel

First, Sunset claims promissory estoppel. Sunset's promissory estoppel claim is premised on the idea that Capital One promised to repay the funds, and Sunset relied on that promise. (Am. Compl. ¶ 46.) This claim is preempted by Article 4A because it relates to the same underlying issue as the transfer of funds: whether Capital One was required to return the funds that Sunset mistakenly transferred to it. Specifically, it is preempted by § 4A-211, cmt. 5, which says that receiving banks may agree to cancel a payment order

but are not required to regardless of the circumstances. Accordingly, the Court will dismiss Sunset's promissory estoppel claim.[6]

### 2. Breach of Contract

Next, Sunset claims breach of contract. This claim is pursuant to the Inter-Bank Hold Harmless Agreement, for which Sunset was allegedly the third-party beneficiary. (*Id.* ¶ 50.) Though the Inter-Bank Hold Harmless Agreement is a contract that naturally gives rise to its own rights and obligations, Sunset's breach of contract claim is preempted because it relates to the rights addressed in § 4A-211. By signing the Inter-Bank Hold Harmless Agreement, Foothills agreed to indemnify Capital One, which directly relates to the provision in § 4A-211 that provides Capital One with an indemnification right. *See* U.C.C. § 4A-211(f). Moreover, the Inter-Bank Hold Harmless Agreement speaks to the same underlying issue throughout Article 4A: whether Capital One has a duty to return the payment order. Accordingly, the UCC preempts Sunset's breach of contract claim and the Court will dismiss it.

---

[6] Even if it were not preempted by Article 4A, the Court would grant Capital One's Motion to Dismiss as to this claim because Sunset has failed to plead the requirements for promissory estoppel. A plaintiff claiming promissory estoppel must prove (1) a clear and definite promise was made, (2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and (3) the promise must be enforced to prevent justice. *Spanish v. Dental Health Prods., Inc.*, No. 16-4408, 2018 WL 1122376, at *4 (D. Minn. Mar. 1, 2018) (applying Minnesota state law). Here, Sunset has not pleaded any facts that show that it relied on Capital One's promise to repay the funds to its detriment. Dismissal of this claim is proper.

### 3. Conversion, Civil Theft, and Unjust Enrichment Claims

Lastly, Sunset claims conversion, civil theft, and unjust enrichment. All three claims are based on the idea that Capital One is wrongfully exercising control over the remaining funds, which are Sunset's property. (Am. Compl. ¶¶ 37, 41, 55.) This theory flows directly from Sunset's claim that Capital One could not accept the funds transfer under the UCC because of its alleged knowledge of the misdescribed beneficiary. Whether Capital One properly accepted a misdescribed wire transfer is addressed in § 4A-207. Therefore, these claims are all preempted by the UCC, and the Court will dismiss them accordingly.

### CONCLUSION

The Court will deny Capital One's Motion to Dismiss as to the declaratory and injunctive relief claims because Sunset adequately pled a unilateral cancellation of a payment order and misdescription of the beneficiary. The Court will require Sunset to amend its complaint and identify the specific UCC provisions under which it is entitled to declaratory and injunctive relief. Further, the Court will grant Capital One's Motion to Dismiss as to the promissory estoppel, breach of contract, conversion, unjust enrichment, and civil theft claims because they are preempted by the UCC.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss [Docket No. 13] is **GRANTED** as to Plaintiff's promissory estoppel, breach of contract, conversion, unjust enrichment, and civil theft claims (Counts I, II, III, IV, and V).

2. Defendant's Motion to Dismiss [Docket No. 13] is **DENIED** as to Plaintiff's declaratory relief and injunctive relief claims (Counts VI and VII).

3. Plaintiff must amend its Amended Complaint [Docket No. 12] to identify the specific Uniform Commercial Code provisions under which it believes it is entitled to declaratory and injunctive relief within 30 days from the date of this Order.

DATED: January 23, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge